UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| TODD DENSON, | ) | |
|---|---|---|
| Petitioner, | ) ) ) | 2:06-cr-00081-GZS |
| v. | ) ) | 2:13-cv-00328-GZS |
| | ) ) | 1:10-cr-00090-GZS |
| UNITED STATES OF AMERICA, | ) ) | 1:13-cv-00329-GZS |
| Respondent | ) | |

## **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Petitioner Todd Denson was twice convicted of wire fraud. *United States v. Denson*, 689 F.3d 21, 22-23 (1st Cir. 2012). His first conviction, in 2007, was based on his guilty plea. His second conviction, in 2011, followed a 2010 jury trial. In the pending motion, pursuant to 28 U.S.C. § 2255, Petitioner seeks to vacate, set aside or correct the sentence that followed the second conviction. (Motion, ECF No. 106.)[1]

Through his motion, Petitioner claims ineffective assistance of counsel at his 2010 trial, alleging that: (1) counsel failed to file a motion in limine to exclude evidence of the prior conviction and the prior bad acts upon which the 2007 conviction was based; (2) counsel failed to secure witnesses to testify and authenticate documentary evidence; (3) counsel failed to obtain and offer certain documentary evidence; and (4) counsel failed to provide him with access to

---

[1] Petitioner's 28 U.S.C. § 2255 motion cites the docket number for the case involving the 2007 conviction that followed his guilty plea, and, therefore, the motion has been docketed under that case. (2:06-cr-00081-GZS, 2:13-cv-00328, ECF No. 77.) The same motion is also docketed in the case involving the 2011 conviction that followed his 2010 jury trial. (1:10-cr-00090-GZS, 1:13-cv-00329-GZS, ECF No. 106.) The substance of the section 2255 motion raises an issue concerning the admission at trial of evidence of the 2007 conviction and the acts upon which the 2007 conviction was based. Petitioner's section 2255 motion seeks relief based on alleged errors in the second case only. For that reason, record references in this recommended decision are to the second case, unless otherwise indicated.

discovery.[2] The recommendation is that the Court deny the requested relief and dismiss the motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner was indicted in 2006 and pled guilty in 2007 to seven counts of mail and wire fraud that occurred at various times from August 2005 to the date of the indictment in October 2006. As explained by the First Circuit in its opinion on Petitioner's appeal of his 2011 conviction and the concurrent revocation of his supervised release, the conduct that led to the 2007 conviction started when

> persons in Africa emailed Denson saying that he (Denson) had inherited the rights to an overseas company worth $9—plus million. They also said that there was a pile of cash in a Barclays Bank account in London just waiting there for him. All he had to do was send over a few thousand dollars to take care of taxes, wire-transfer fees, and the like, and he would be a very rich man.

*Denson*, 689 F.3d at 22. Petitioner subsequently initiated contact with the local United States Secret Service office, during which contact an agent told Petitioner the proposal was a scam and that he could be criminally liable if he solicited money from other people to send abroad. *Id.* at 22-23. Nevertheless, Petitioner solicited money from others, deceiving them by representing that they were investing in his window-washing patent or other business. *Id.* at 23. Petitioner again initiated contact with the Secret Service, admitted that he had deceived people, and stated that he now realized that it was a scam and that he was done with it. *Id.* A week later, agents confronted him with proof that he had tried to convince an undercover agent to invest $30,000 in an overseas construction venture. *Id.*

---

[2] Petitioner's 28 U.S.C. § 2255 motion is also interpreted to contain a claim that the Government violated its obligation to provide discovery, as discussed below. Plaintiff's reply contains several new claims that were not raised in the initial motion, which new claims are also discussed below.

2

Petitioner pled guilty to the seven counts of mail and wire fraud. The Court sentenced him to eighteen months of imprisonment on each of the counts, to be served concurrently, followed by three years of supervised release, and ordered him to pay $54,861.98 in restitution. (Docket No. 2:06-cr-00081-GZS: Indictment, ECF No. 19 at 1-2; Fed. R. Crim. P. 11 (Rule 11) Tr., ECF No. 57 at 19-20; Judgment, ECF No. 45 at 2, 3, 5.) Petitioner did not appeal from the 2007 judgment or sentence.

> Petitioner was serving the supervised release portion of his 2007 sentence when he
> 
> returned to his old ways, hustling a bunch of people out of thousands of dollars by saying (among other lies) that he had made a killing in the overseas stock markets or had millions sitting in a Scottish bank but that he needed their money—which he would pay back, and then some—to get what he said was rightfully his.

*Denson*, 689 F.3d at 23.[3] Petitioner was indicted on thirteen counts of wire fraud alleged to have been committed between June 2009 and April 2010. (Superseding Indictment, ECF No. 29 at 1.) At Petitioner's jury trial, several witnesses testified that Petitioner's conduct was directed at them during the period covered by the indictment. (Trial Tr. I, ECF No. 94 at 14-19, 38-47, 110, 118-20, 137-41; Trial Tr. II, ECF No. 95 at 18-25, 42-43.) The Government also introduced documentary evidence to corroborate testimony about the wire transfers. With a limiting instruction in accordance with Fed. R. Evid. 404(b), through the testimony of a former United States Secret Service special agent, the Court admitted Petitioner's 2006 signed written statement admitting to his scam activity. (Trial Tr. II at 135-38.) The Government also introduced, and the Court admitted, copies of the 2006-2007 indictment, the redacted change-of-plea transcript, the prosecution version, the judgment and conviction, and a redacted sentencing transcript. (Trial Tr. II at 4, 6.)

---

[3] A United States Secret Service agent who testified at Petitioner's 2010 trial referred to this as an "advance fee fraud scam," something he explained to Petitioner in 2005, *i.e.*, before Petitioner was prosecuted the first time for mail and wire fraud. (Trial Tr. III, ECF No. 96 at 29-31.)

Petitioner waived his right to testify at trial. (Trial Tr. III at 68-70.) The jury found Petitioner guilty on all counts. The Court sentenced Petitioner to concurrent prison terms of thirty months on each of the counts, followed by three years of supervised release. The Court also ordered Petitioner to pay $21,233.00 in restitution. (Amended Judgment, ECF No. 83 at 2, 3, 5.) In addition, following a hearing, the Court revoked Petitioner's supervised release for "(a) committing wire fraud, (b) neglecting to file truthful and complete monthly reports with probation, and (c) failing to disclose financial gains (like lottery winnings, income-tax refunds, *etc.*) and to apply them to court-ordered obligations." *Denson*, 689 F.3d at 23 n.2. The Court sentenced Petitioner to a term of fifteen months of imprisonment for the supervised release violations, which term Petitioner was to serve consecutive to the thirty-month prison term, followed by twenty months of supervised release, to run concurrent with the supervised release in case 1:10-cr-00090-GZS. (Docket No. 2:06-cr-00081-GZS: Amended Revocation Judgment, ECF No. 65 at 2-3.)

Petitioner appealed. On appeal, Petitioner argued that the jury instructions were deficient. First, he argued that the "willful-blindness instruction likely confused the jury into thinking that it could convict based on what a reasonable person in his shoes should have known rather than on what he actually believed or intended." *Denson*, 689 F.3d at 24. Second, he argued that the good faith instruction "did not 'clarify' that good faith turned on what he *subjectively* believed instead of what some reasonable person would have believed." *Id.* at 25. Third, he argued that the Court erred in giving its "willful blindness" and "good faith" instructions back-to-back. *Id.* at 26. In addition, Petitioner appealed the sentence, arguing that the Court overlooked his terminal illness and placed "too much weight on the need to protect the public." *Id.* at 26-27. The First Circuit affirmed both the conviction and sentence, as well as the sentence on the revocation. *Id.*

at 29. Petitioner filed a petition for a writ of certiorari to the United States Supreme Court, which denied the petition in January 2013. *Denson v. United States*, 133 S. Ct. 996 (2013).

Petitioner's section 2255 motion is dated August 26, 2013, the date on which it was filed. (Motion at 8.) The Government acknowledges that the petition was timely filed given that it relates only to the sentence on the second conviction. (Response at 2 & n.2.) The Government requests a summary dismissal of the motion.

## II. DISCUSSION

### A. Standard of review

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994). Here, given that Petitioner alleges ineffective assistance of counsel, and given that Petitioner's right to counsel is guaranteed by the Sixth Amendment, Petitioner in essence argues that the Court imposed a sentence in violation of "the Constitution or laws of the United States."

A section 2255 petitioner has the burden to establish by a preponderance of the evidence that he or she is entitled to relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A habeas petition is not a substitute for an appeal. *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Id.* at 127-28. An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the petitioner demonstrates that counsel's representation fell below an objective standard of reasonableness and prejudiced the petitioner's defense. *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007). Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010).

To succeed on a claim of ineffective assistance of counsel, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011). A district court reviewing such claims need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697.

As for the "cause" test, the court must be "'fairly tolerant'" of counsel's performance because the Constitution does not guarantee a perfect defense. *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)). The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional

norms.'" *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89). "Judicial scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must overcome a 'strong presumption . . . that, under the circumstances, the challenged action "might be considered sound trial strategy."'" *Id.* (quoting *Strickland*, 446 U.S. at 689). The "actual prejudice" test requires a showing "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)). In determining whether an evidentiary hearing is required, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those allegations are merely conclusory, contradicted by the record, or inherently incredible.'" *Owens*, 483 F.3d at 56 (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002)). Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

### B. Grounds Asserted and Analysis

**1. Failure to file motion in limine to exclude prior bad acts and the prior conviction**

Petitioner contends that counsel was ineffective for failing to file a motion in limine to exclude evidence of Petitioner's prior similar bad acts and the prior conviction for mail and wire

7

fraud. (Motion at 4.)[4] As part of this contention, Petitioner complains that counsel failed to move to exclude the testimony of Petitioner's probation officers. (Motion at 4.)

In his trial brief, Petitioner maintained that his anticipated defense at trial was that Petitioner sincerely believed that there was money in the overseas accounts, that the money he solicited went to persons other than himself, and that he did not materially benefit from the wire transfers. (Petitioner's Trial Brief, ECF No. 39 at 1-2.) Petitioner acknowledged that the Government likely would seek to introduce the "prior conviction of mail and wire fraud related to the same funds in overseas accounts." (*Id.* at 2-3.) In the Government's trial brief, it provided notice of intent to introduce evidence of the prior conviction. (Government's Trial Brief, ECF No. 49 at 16-17.)

At trial, evidence of Petitioner's prior bad acts was introduced through several witnesses. One victim testified that Petitioner was a long-time friend, and that he lost about $10,000 in 2005 and 2006 based on Petitioner's misrepresentations. (Trial Tr. I at 106-10.) A former Secret Service special agent testified that Petitioner's 2006 written statement declared that Petitioner had sent $60,000 of his own money to an overseas account; that persons in South Africa told him that he had an opportunity to earn $9.2 million, provided the he covered the taxes, paperwork and wire transfer fees; that he traveled to London and hired an attorney to represent him; that he was shown the $9.2 million and was told it was his; that he chose to have the money wired to his bank account; and that in order not to raise suspicions when bringing the money back to the United States, he and his London-based attorney created a company. (Trial Tr. II at 135-36.) The special agent further

---

[4] Petitioner's argument is interpreted broadly to include both evidence of the 2007 conviction and prior bad acts that resulted in that conviction or that otherwise took place before the period covered by the charges in the 2010 trial. For purposes of this recommended decision, acts that took place before June 2009 are considered prior acts, because the superseding indictment at issue in the 2010 trial charged acts that took place from about June 2009 to about April 2010. (Superseding Indictment, ECF No. 29 at 1.)

8

testified that Petitioner represented that six persons invested with him and that he owed money to them. (*Id.* at 136.) In his written statement, Petitioner admitted that he misled his victims. (*Id.* at 136-37.)[5] Another Secret Service agent testified that Petitioner initially told investigators in 2006 that he did not solicit anyone and did not send money overseas, but when the officers revealed that he had been the subject of an undercover operation, he confessed that he had wrongfully solicited money. (Trial Tr. III, ECF No. 96 at 34-35.)

The evidence regarding the conduct that was the subject of the 2010 trial was similar to the evidence of the prior bad acts and the prior conviction, and included testimony that Petitioner informed some of his victims and intended victims that he had been convicted previously.[6] The evidence also included testimony from some of the officers who supervised Petitioner when he was released from prison.[7]

The admissibility of the prior conviction and the Petitioner's prior bad acts is governed by Rules 403 and 404(b)(2) of the Federal Rules of Evidence. Rule 404(b)(2) provides an exception

---

[5] Counsel requested and received a limiting instruction prior to the special agent's testimony about the content of Petitioner's written statement. (*Id.* at 133-34.)

[6] For example, one witness in the 2010 trial testified that Petitioner told him that Petitioner had millions of dollars in a bank account in England, that Petitioner told him he needed to borrow $6,000 to release the money, and that in return, the witness would receive the $6,000 and a motorcycle. (Trial Tr. I at 118-19.) This witness, who hosted Petitioner at his home for a few days, testified that during that time, Petitioner told him he was a convicted felon with probation restrictions. (*Id.* at 123-24.) Another witness testified that Petitioner told him he had been convicted for taking people's money on loan to either invest or to obtain access to other money. (Trial Tr. I at 35-36.) He told this victim that he needed $5,000 to obtain money to pay back his prior investors, and that he had a "barrister in the United Kingdom" who would use the $5,000 to release money from a $10 million account. (*Id.* at 36-39.)

[7] As the Court indicated in a sidebar discussion at trial, the testimony of Petitioner's probation officers may or may not have been about similar prior acts by Petitioner. (Trial Tr. II, ECF No. 95 at 88-89.) Petitioner's Portland-based United States Probation Officer testified that based on the prior conviction, Petitioner was subject to probation with special conditions to report unanticipated financial gains, to apply any gains to pay outstanding court-ordered obligations, and to avoid obtaining credit unless approved by the probation officer. (Trial Tr. II at 83-84.) The probation officer testified that Petitioner did not report financial gains from overseas, he did not pay restitution, and he did not obtain prior approval for credit. (*Id.*) Petitioner's Bangor-based probation officer testified similarly. (*Id.* at 87-88.) The Government argued that the testimony was relevant to Petitioner's knowledge and intent. (*Id.* at 88-89.) Defense counsel opted to forego the instruction following the testimony of the two probation officers. (*Id.* at 89.)

9

to Rule 404(b)(1), which states in pertinent part: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Under the Rule, however, evidence of a crime, wrong, or other act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."

In *United States v. Landry*, 631 F.3d 597, 601-02 (1st Cir. 2011), the First Circuit stated that the admissibility of prior crimes is determined by a two-part test to determine (1) whether the evidence has special relevance to a contested issue, based on "the temporal relationship of the other act and the degree of similarity to the charged crime," pursuant to Rule 404(b); and (2) whether the danger of unfair prejudice outweighs the probative value of the evidence, pursuant to Rule 403.  In *Landry*, the Court held that evidence that the defendant provided false identification at a traffic stop was admissible to show intent or knowledge and thus to rebut an innocent-involvement defense in the defendant's trial on fraud and other charges.  *Id.* at 602.  In *United States v. Wyatt*, 561 F.3d 49 (1st Cir. 2009), the First Circuit noted that the requirement that the evidence have "'some special relevance' other than to prove that the defendant had a propensity to commit the crime in question, . . . is not 'particularly demanding.'"  *Id.* at 53 (quoting *United States v. Jiminez*, 507 F.3d 13, 17 (1st Cir. 2007)); *see also United States v. Scelzo*, 810 F.2d 2, 4 (1st Cir. 1987) ("We have little difficulty in concluding that the evidence of Scelzo's prior involvement in a credit card scheme was specially probative of his knowledge and intent in respect to the credit card scheme forming the basis of the current indictment.")

In this case, the evidence of Petitioner's prior conviction, and the testimony of the probation officers about Petitioner's special probation conditions and his related conduct, were relevant to refute Petitioner's defense that he did not know about the scam and that he acted with a good faith belief that he was not carrying out a scam. *See Landry*, 631 F.3d at 602. The evidence of the prior conviction and the prior bad acts was thus relevant to the Government's attempt to prove Petitioner's knowledge, intent, absence of mistake, or lack of accident. *See id.* Because the evidence was admissible under Rule 404(b)(2), and would not be excluded under Rule 403, counsel's decision not to try to exclude that evidence was not deficient. *See Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (holding that because the petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail").

Furthermore, the fact that counsel did not request a limiting instruction on each occasion is not fatal. On two occasions in the trial, counsel requested and received a limiting instruction when evidence of the prior bad acts or the conviction was admitted. (Trial Tr. I at 113-14; Trial Tr. II, ECF No. 95 at 133-34.)[8] Given that the Court had administered a limiting instruction at two points during the trial, counsel's decision not to pursue a limiting instruction after the two probation officers finished testifying was well within the bounds of professional competence. *See Phoenix v. Matesanz*, 233 F.3d 77, 84 (1st Cir. 2000) ("Defense counsel is allowed to make strategic decisions, within the wide bounds of professional competence, . . . on which areas to focus his energies."). Counsel's decision suggests that based on the prior limiting instructions, she

---

[8] The limiting instructions, given twice and identical in all essential respects, provided that the jury must not use evidence of "previously committed acts similar to those charged in this case . . . to infer that because of [Petitioner's] character, he carried out the acts charged in this case," but rather that the jury could consider the evidence only for limited purposes of deciding state of mind, intent, plan, motive, accident or mistake, as explained by the Court. (Trial Tr. I, ECF No. 94 at 113-14; Trial Tr. II, ECF No. 95 at 134.) In each instance, counsel was satisfied with the instruction. (Trial Tr. I at 114; Trial Tr. II at 134.)

concluded that there would be little prejudice from the introduction of the testimony of the probation officers. *See United States v. Doe*, 741 F.3d 217, 231 (1st Cir. 2013) (noting that counsel turned down the court's offer of a limiting instruction on prior bad acts, and holding that "the knowing waiver of this instruction is probative of the scant prejudice ascribed to the evidence by defense counsel, who, of course, was ideally positioned to make a contemporaneous first-hand determination as to the evidence's actual effect on the jury").[9]

Even if Petitioner could persuade the Court that his counsel was deficient by failing to seek the exclusion of or request a limiting instruction regarding the testimony of the probation officers, Petitioner has failed to show prejudice. *See Strickland*, 466 U.S. at 694. Preliminarily, as explained above, because the evidence was plainly admissible and could not reasonably be excluded, Petitioner cannot demonstrate prejudice resulting from counsel's decision not to seek the exclusion of the evidence. Additionally, Plaintiff has failed to point to any evidence to suggest that had counsel requested a limited instruction regarding the probation officers' testimony, the result of the trial would have been different. Indeed, "the prejudicial effect of this evidence is small considering its probative value," and the evidence is not "so 'shocking or heinous [that it is] likely to inflame the jury.'" *United States v. Gonzalez-Sanchez*, 825 F.2d 572, 581 (1st Cir. 1987) (quoting *Scelzo*, 810 F.2d at 5) (holding that "the evidence of [one of the defendant's] involvement with the same people in past arson and fraud schemes is especially probative of the issue whether

---

[9] In tandem with his claim of ineffective assistance of counsel concerning the prior bad acts and conviction, Petitioner also asserts that he "took every precaution including the assistance of an attorney to conclude financial [arrangements] to have prior alleged victims paid through the attorney." (Motion at 4.) To the extent that Petitioner claims ineffective assistance of counsel for failing to introduce evidence of his alleged innocent intent, that claim is without merit. An attorney witness called by the Government testified, on both direct and cross-examination, that Petitioner had engaged him to establish an account to receive money that Petitioner anticipated and to disburse the money in accordance with Petitioner's restitution obligations. (Trial Tr. II at 100-01, 125-26.) Defense counsel also elicited from other witnesses that Petitioner had told them he intended to repay them. (Trial Tr. I at 28-29, 56-57, 64, 102-03.) That the jury was not convinced does not render counsel's performance deficient. *See Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (noting that the assessment of an attorney's performance is "fairly tolerant" because "the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense") (quotation marks omitted).

he was an innocent 'tool' of others or a knowing participant in the conspiracy" to commit arson and defraud an insurer).

### 2. Failure to obtain witnesses

Petitioner also claims that his counsel failed "to obtain witnesses to testify and authenticate documentary evidence . . . ." (Motion at 5.) Petitioner asserts that "[t]here were other witnesses for the [defense] that the trial attorney did not bother to subpeona nor did the trial attorney subpoena the same witnesses that the Government had [subpoenaed.] If attorney had done so questions would have been asked regarding the integrity." (*Id.*) No further facts are provided in the motion to support this claim. After the Government argued that the claim should be dismissed for vagueness, Petitioner in his reply identified three potential witnesses that he asserts counsel should have pursued. Specifically, Petitioner maintains that his attorney in the prior prosecution could have testified that "the money at issue was not a hoax and that [Petitioner] had a good faith belief that the money was real through documented evidence." (Reply, ECF No. 137 at 3.) He also contends that two contacts, one in the United Kingdom and the other in Ghana, are attorneys with information that would have been helpful for the defense. (*Id.*)

Petitioner must provide the facts that support his claims. *See David*, 134 F.3d at 478 ("To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings.") Petitioner did not provide any supporting facts in his initial petition. *See United States v. Paul*, 2003 WL 2004407, at *5 n.3, 2003 U.S. Dist. Lexis 7303, at *14 n.3 (D. Me. Apr. 29, 2003) (recommended decision, adopted May 23, 2003) (noting that section 2255 motions are not treated as "'rolling starts' with the anticipation that the court will allow new factual assertions . . . to be introduced on an ongoing basis, and even after the United States has filed its response"). In some instances, however, new

facts contained in a reply could necessitate further briefing by the Government. *See United States v. Mora-Garcia*, 2010 WL 3057251, at *1, 2010 U.S. Dist. Lexis 77616, at *2 (S.D. Cal. Aug. 2, 2010).

Here, further briefing is not necessary. Given that Petitioner pled guilty in the earlier prosecution, presumably after discussions with his counsel, Petitioner's assertion that the testimony of his attorney from the earlier prosecution would have demonstrated that he was not involved in a hoax is unconvincing. His assertion that the two alleged overseas attorneys would have provided helpful testimony is likewise unpersuasive. Not insignificantly, Petitioner asserts no specific facts to which the witnesses would testify that would suggest that Petitioner was not involved in the hoax. Indeed, some of the trial witnesses testified that both of the foreign individuals talked with victims and potential victims about either transferring money to foreign accounts or about the promise of transfers of large sums into the victims' accounts, and that Petitioner sent victims' money to one of the foreign individuals as part of the scheme. (Trial Tr. I at 42, 46, 57-59, 81, 109, 163-64.) Because of the foreign individuals' involvement in the scheme, Petitioner's contention that they would provide helpful testimony is without merit.

### 3. Failure to offer documentary evidence

Petitioner also argues that his counsel was ineffective because she failed to offer documents "from the European Union, National Audit Office, a U.K. Government agency. The Financial Service Authority. " (Motion at 6.) In response to the Government's argument that the claim was too vague to warrant review, Petitioner argues that counsel should have sought letters rogatory that he alleges "would have provided evidence of bank accounts in foreign countries." (Reply at 4.) Petitioner also argues that counsel misplaced evidence that Petitioner had given to her. (*Id.*) He alleges that these included (1) "a Royal Bank of Scotland bank to bank transfer" in December 2005

to a bank account in Maine belonging to Petitioner, (2) "letters of authorizations from attorneys assisting [Petitioner]," (3) "letters from the European Union and the United Nations delivery of consignments," and (4) identification cards from the United Nations and a bank where Petitioner had an account. (*Id.*) In addition, Petitioner references what may have been a communication by trial counsel to appellate counsel regarding the evidence. (*Id.* at 5.)

Regardless of whether counsel secured the identified documents and chose not to introduce them at trial, did not obtain the documents, or misplaced the documents, Petitioner's assertions do not support a claim of ineffective assistance of counsel. Insofar as Petitioner admitted to acts of wire fraud in 2005 as part of his guilty plea, evidence of a bank account transfer in 2005 could not conceivably have made a difference in the outcome of the 2010 prosecution. *See Turner*, 699 F.3d at 584 (noting that to succeed on a claim of ineffective assistance of counsel, the petitioner must establish a reasonable probability that, but for the alleged error by counsel, "the result of the proceeding would have been different"). Furthermore, the absence of documentary evidence was central to the defense strategy. That is, counsel cited the lack of documentary evidence, and the Government's failure to obtain that evidence, to argue that the Government had not proven criminal intent. (Trial Tr. III at 50-51; Closing Argument, ECF No. 98 at 40.) Arguably, documentation that confirms some of the transactions would only bolster the Government's case. In short, Petitioner has failed to meet his burden to demonstrate that there is a reasonable probability that the documents would have made a difference to the outcome. *See Turner*, 699 F.3d at 584. Petitioner has thus failed to establish prejudice. *See Strickland*, 466 U.S. at 697.

### 4. Discovery violations and failure to use discovery in cross-examination

Petitioner alleges that he "was not given direct access" to discovery prior to trial, and that the partial discovery that he obtained after the trial revealed that the trial testimony of one of the

law enforcement agents was false. (Motion at 7.) A review of the petition generates a question as to whether he also argues that the Government violated his rights by failing to provide certain discovery. (*Id.*) *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.") In support of this argument, Petitioner also cites his counsel's failure to cross-examine law enforcement agents effectively. He specifically notes the fact that his counsel did not use questions that he provided to counsel prior to the trial.[10]

To the extent that Petitioner claims that the Government violated its discovery obligations, he is not entitled to habeas relief under *Brady*. Because Petitioner could have raised a *Brady* argument in his direct appeal but he did not, the issue is procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161 (1996). To overcome the procedural default, Petitioner must demonstrate cause for the default and prejudice resulting from the errors. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982). Petitioner's stated cause for the default is ineffective

---

[10] Petitioner alleges that when a special agent testified to a 2005 phone conversation with Petitioner, the agent omitted from his testimony that it was Petitioner who called the Secret Service, to ask about something that Petitioner had received via the Internet. (Reply at 5.) Petitioner also notes that the agent testified that Petitioner falsely told him one day in 2006 that Petitioner was out-of-state when the agent had observed Petitioner around his house. (*Id.*) Petitioner asserts in the reply that when he tried to show the agent toll receipts the next day, the agent dismissed them as unimportant. (*Id.*) Petitioner maintains that the agent failed to testify that he called the two alleged overseas attorneys and a third person in Ghana, using Petitioner's telephone, and spoke with all three, stating that he was a Secret Service agent, but when they responded that the agent should call back the next day, the agent failed to do so. (*Id.* at 5-6.) He contends that counsel failed to ask the agent about evidence that Petitioner gave to the agent in 2006 that Petitioner had a particular bank account. (*Id.* at 6.) Petitioner alleges that counsel failed to ask the agent about phone conversations the agent and Petitioner had in 2009-2010 in which Petitioner tried to be open and accountable. (*Id.*) Petitioner alleges that he had prepared a number of questions for counsel to ask of two agents who testified, but counsel did not ask those questions. (*Id.*) He argues that counsel should have cross-examined a probation officer about an interview in which Petitioner said that money was "already sourced out overseas," when the interview did not end with an arrest of Petitioner for violation of his probation conditions. (*Id.* at 7.)

assistance of counsel, but the facts that he alleges do not establish either deficient performance by counsel or prejudice from the failure to introduce the evidence he cites in his reply.[11]

Even if the issue was not defaulted, Petitioner cannot prevail on his argument. If the Government fails "to assist the defense by disclosing information that might have been helpful in conducting the cross-examination . . . such suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985). In a direct appeal, the conviction is reversed "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Id.* None of Petitioner's allegations undermines confidence in the outcome of the trial.

The record also does not support Petitioner's contention that his counsel did not question certain witnesses properly or effectively. Counsel cross-examined the agent extensively on elements of his testimony that might bear favorably on Petitioner's intent. The fact that counsel did not ask every question Petitioner wanted asked does support Petitioner's argument. Counsel are expected to use their experience and skill when confronting witnesses. To require counsel to recite every question or argument that a criminal defendant requests would not only ignore the importance of the training and judgment of counsel, but would undoubtedly prove prejudicial to defendants in many cases. In this case, counsel's performance was well within the range of

---

[11] Counsel cross-examined one of the agents with questions clearly intended to further Petitioner's defense that he did not believe he was part of a scam. For example, counsel elicited that Petitioner told law enforcement that he traveled to England, where Petitioner was shown some cash, and that Petitioner gave law enforcement copies of overseas bank statements. (Trial Tr. III at 47-49.) Counsel also brought out that the Government's investigation did not include determining that there was no money in the accounts referenced by the bank statements Petitioner had provided. (*Id.* at 50-51.) Counsel established that the investigation did not turn up evidence that Petitioner made money from the victims' payments to him. (*Id.* at 58.)

reasonable and competent professional assistance, and Petitioner has not overcome the strong presumption that counsel exercised sound trial strategy. *See Bucci*, 662 F.3d at 30.[12]

### III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. The recommendation is that the Court deny relief, dismiss Petitioner's motion for habeas relief under 28 U.S.C. section 2255, and deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

---

[12] In his reply memorandum, Petitioner raises several new claims. Petitioner alleges that he was not given a *Miranda* warning prior to the questioning that led to Petitioner's written statement (Reply at 6); that he did not thoroughly read through his 2006 written statement to law enforcement; that he could not read and understand what was written in the statement (*id.* at 6-7); that counsel was ineffective for failing to put Petitioner on the stand to testify, for advising him not to testify, and for failing to explain to him that if he did testify, counsel would be the first to question him on direct examination (*id.* at 7); and that counsel failed to perform adequately in sentencing (*id.* at 8). Because Petitioner asserted these claims for the first time in his reply, he has not adequately raised them. "A first petition for post-conviction relief under § 2255 should raise all available claims. Informal reference to a new claim in a reply brief will not suffice to raise a claim if the district court does not address that claim in its order." *United States v. Barrett*, 178 F.3d 34, 57 (1st Cir. 1999) (holding that the "[f]ailure to raise an available claim does not permit an end-run around the requirements of § 2255 by resort to § 2241 or the All Writs Act," and denying the petitioner's request as a second or successive petition); *see also United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 (10th Cir. 2013) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)) (noting that in civil cases, "a party waives an issue in the district court if he waits to raise the argument until his reply brief," and holding that "the same rule logically applies in a § 2255 proceeding, considering that plain error review does *not* apply to forfeited errors on a § 2255 review"); *United States v. Berry*, 624 F.3d 1031, 1039 n.7 (9th Cir. 2010) (holding that because a claim was raised for the first time in the petitioner's reply brief, it was not addressed by the district court and was outside the scope of appellate review).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 25th day of August, 2014.